1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

12

JAMES JOSEPH BRUNDAGE,

13
            Petitioner,

14    v.

15    STATE OF WASHINGTON,

16
            Respondent.

CASE NO.  C10-5718RJB/JRC

REPORT AND RECOMMENDATION

Noted for June 17, 2011

17

18        A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 has been referred to

19    United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and

20    (B), and Local Magistrate Judge Rules MJR3 and MJR4.

21        Petitioner is challenging his 2003, Kitsap County convictions by jury verdict for one

22    count of rape in the second degree, one count of rape in the first degree, one count of unlawful

23    possession of a firearm, and seven counts of violating court orders.  His sentences run

24    concurrently with the longest sentence being 498 months.

25        The majority of the grounds for relief raised by Mr. Brundage are procedurally barred.

26    The one exhausted ground for relief, regarding ineffective assistance of counsel, is without merit.

Counsel's decision to tell the jury to discount Mr. Brundage's own testimony was clearly a

strategic decision to try to limit the damage done by Mr. Brundage.  The court recommends this

petition be denied.

<u>FACTS</u>

The Washington State Court of Appeals summarized the facts as follows:

> Brundage and D.E.B. met and began dating in 1992. They married in
> August 1999. During their relationship, they had two children.
> Due to marital difficulties, D.E.B. left the couple's home in September
> 2002. D.E.B. left some possessions in the house, including a rented washer and
> dryer. She and Brundage arranged to remove the appliances on October 18, 2002.
> When D.E.B. arrived, she exited her car and left her then two-year-old daughter,
> Sadie, in a car seat.
> D.E.B. entered the basement to move boxes into a storage area in the
> garage. When she went into the storage room, Brundage followed, shutting the
> door. She told him to let her out, to which he responded, "I just want to talk to
> you." I Report of Proceedings (RP) at 53.
> D.E.B. walked to the door, but the doorknob had been removed and she
> could not exit. After Brundage tried to restrain her from leaving, she grabbed a
> board and Brundage grabbed a pipe. Both eventually dropped the objects.
> Brundage became very angry, pushed D.E.B. to the ground, and held her
> there by pressing her shoulders down. He then raped her vaginally and anally.
> Afterward, Brundage placed D.E.B.'s hands behind her back and
> handcuffed them to a post. He tied her feet with rope and placed silver tape
> around her mouth and head. While binding her, he apologized.
> Brundage then left and returned with Sadie and a bag of pills. He told
> D.E.B. that if she took the pills, she would fall asleep, he would leave, and Sadie
> would be there when D.E.B. awoke. If she refused, he would not let her go.
> D.E.B. swallowed the pills.
> D.E.B. awoke in a car trunk. Brundage stopped the car at an abandoned
> cabin-style motel. He led her into the back of the cabin, where two mattresses
> were on the floor. She saw a silver Rueger firearm and a case. She knew that
> Brundage kept his shotgun in the case. She feared that he would use one of the
> weapons on her.
> D.E.B. asked about Sadie. Brundage told her that Sadie was "safe." I RP at
> 80. When D.E.B. asked Brundage why he had done this, he responded that he
> wanted to spend one more night together.
> During the following 24 hours, Brundage raped D.E.B. three more times.
> In between the rapes, he talked about his need to "get away" and said, " 'Maybe I
> should go to Mexico.'" I RP at 90. At one point, he pointed the gun at his chest.
> He placed D.E.B.'s hands on the gun, telling her to shoot him. She did not pull the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

trigger.  Brundage eventually unbound D.E.B. and left. She escaped and reported the crimes to the police. Brundage later turned himself in to authorities.

By sixth amended information, the State charged Brundage with the following: (1) one count of first degree rape with deadly weapon and domestic violence special allegations; (2) three counts of first degree rape with firearm and domestic violence special allegations; (3) one count of first degree rape; (4) one count of first degree kidnapping with firearm, domestic violence, and sexual motivation special allegations; (5) two counts of first degree unlawful possession of a firearm; (6) seven counts of violation of a court order with domestic violence special allegations; and (7) one count of first degree child molestation.

A jury convicted Brundage of 11 counts: (1) second degree rape with a domestic violence special allegation (count I), (2) first degree rape with firearm and domestic violence special allegations (count II), (3) second degree kidnapping with firearm and domestic violence special allegations (count V), (4) unlawful possession of a firearm (count VI), and (5) seven counts of violating a court order with domestic violence special allegations (counts VIII-XIV).

The trial court imposed a minimum and maximum sentence under RCW 9.94A.712. For the first and second degree rape charges, Brundage's offender score was 12. On the first degree rape count, his initial standard range was 240 to 318 months. As a result of the firearm and domestic violence enhancements, it became 300 to 378 months. For the second degree rape, his standard range was 210 to 280 months.  The statutory maximum term for both rape charges was life imprisonment.

The trial court imposed exceptional minimum sentences of 400 months on count I and 498 months on count II. In its findings and conclusions, it stated that the exceptional sentences were justified because (1) the presumptive sentence was "clearly too lenient" under the multiple offense policy; (2) Brundage's conduct manifested "deliberate cruelty" to the victim; and (3) the current offenses involved domestic violence and (a) were part of an ongoing pattern of physical, psychological, or sexual abuse manifested by multiple incidents over a prolonged period of time, (b) occurred within the sight or sound of Brundage's and victim's minor child, and (c) Brundage's conduct manifested "deliberate cruelty" or intimidated of the victim. Clerk's Papers (CP) at 614-15. The trial court expressly stated that it would impose the same sentence even if only one of the grounds listed were valid. Finally, the trial court imposed the statutory maximum sentence of life.

(ECF No. 20, Exhibit 8 (footnotes omitted)).

## PROCEDURAL HISTORY

Petitioner filed a notice of appeal with the Washington Court of Appeals.  His appeal was denied and the judgment and sentence were affirmed (ECF No. 20, Exhibit 8).  He raised the following issues in his appeal:

1.     Can a "common scheme or plan" be found when there are only general similarities between prior sexual misconduct and the charges in this case?

2.     Where no "common scheme or plan" was shown, was it unfairly prejudicial to admit evidence of prior sexual misconduct?

(ECF No. 20, Exhibit 3).  Petitioner filed a pro se statement of additional grounds for review. The grounds raised are not relevant as none of them were raised in the subsequent motion for discretionary review (ECF No. 20, Exhibit 9).  The Washington Court of Appeals affirmed the convictions and sentence (ECF No. 20, Exhibit 8).  In the motion for discretionary review petitioner raised the same two grounds for relief that his counsel raised on direct appeal.  Thus these two grounds for relief were exhausted, but neither is part of his current petition.  The motion for discretionary review was denied on September 6, 2006 (ECF No. 20, Exhibit 12). This ended direct review.

Just over one year later, on October 1, 2007, Petitioner filed a Personal Restraint Petition raising the following grounds for relief:

1A.    Mr. Kelly deprived Mr. Brundage of his right to effective assistance of counsel at trial in violation of the Sixth Amendment of the United States Constitution.

Counsel failed to file trial brief or written motions to exclude characterizations and opinions regarding Mr. Brundage's conduct and veracity, exclude evidence coming on his assertion of the right to remain silent at time of arrest, or exclude expert testimony to the police regarding Mr. Brundage's guilt.

Subissue- The police detective's opinion, impression and comment testimony on defendant's guilt and silence at time of arrest, solicited by the prosecutor violated Mr. Brundage's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution to right to silence, a fair trial and due process of law.

1 B.    Mr. Kelly's closing argument prejudiced Mr. Brundage. Prejudiced his character and credibility by telling the jury to discount his testimony. (summarized).

1.2 B.  Mr. Kelly failed to object to 404(b) testimony, failed to request a Kilgore evidentiary hearing on the 404(b) witness, JLF (JLC in record), failed to question 404(b) witness JLF, and filed to produce a document that proves that the 404(b) witness failed to give correct testimony at trial.

2.  Ineffective Assistance of Counsel for failing object to photographs of victim and handcuffing to 4x4 post. (summarized)

3.  Photographs at Mt. Rainer improperly admitted against Mr. Brundage.

4.  Improper jury instructions- gun was present but was not used to complete crimes of rape and kidnapping.

5.  Prosecutorial misconduct for using the victim to obtain photographs of ability to handcuff a person to the 4x4 (summarized).

6.  Evidence does not support a rape or kidnapping charge. (Insufficiency of the Evidence).

7.  Erroneous admission of evidence under 404(b).

8.  Improper expert testimony.

9.  Improper comments on his silence.

10.  Errors in calculating offender score and imposing exceptional sentence.

11.  Erroneous admission of character evidence.

(ECF No. 20, Exhibit 14).  The Washington Court of Appeals denied the petition specifically finding the petition "frivolous." (ECF No. 20, Exhibit 17).  The court addressed the petition on the merits and did not find it time barred.  With regard to the only exhausted issue, ineffective assistance of counsel by telling the jury to discount his testimony, the court held the decision was strategy given Mr. Brundage's damaging testimony (ECF No. 20, Exhibit 14, page 2).

Petitioner filed a motion for discretionary review.  The original motion was one hundred and nine pages long and was not considered by the Washington State Supreme Court.  In the revised motion petitioner raised the following grounds for relief:

1.  Ineffective Assistance of Counsel (summarized)

a.      In closing argument asked jury to consider Mr. Brundage's testimony was of "limited value" and "needs to be discounted;"

b.      Failing to adequately research and challenge semen testimony;

c.      In closing argument asked the jury to find Mr. Brundage guilty of lesser included crimes (rape 2nd and kidnapping 2nd) as well as violation of 7 no-contact orders and failed to tell jury that they could find him not guilty of the same crimes;

d.      Failing to consult with petitioner as to trial tactics and strategy.

(ECF No. 20, Exhibit 20 (revised)).  Mr. Brundage placed other grounds for review in appendices and exhibits, but these were not considered by the court (ECF No. 20, Exhibit 22, page 3).  Review was denied September 17, 2009 (ECF No. 20, Exhibit 22).

Petitioner filed another Personal Restraint Petition five days later, on September 22, 2009 (ECF No. 20, Exhibit 24).  The petition was dismissed as time barred because it was well past the one-year state time limit for collateral challenges to a final conviction (ECF No. 20, Exhibit 27).

The petition before this court raises the following grounds for relief:

1.      Ineffective Assistance of Counsel Trial Counsel, marked as Issue (1) ground (2)-(A) for telling the jury to discount his testimony.

2.      Ineffective Assistance of Counsel, marked as Issue (1) ground (2) – (B) for not objecting to the lesser-included instructions and telling the jury to find him guilty of the lesser-included offenses of rape 2nd and kidnapping 2nd.

3.      Ineffective Assistance of Counsel, marked as Issue (1) – ground (3) for failure to cross-examine 404(b) witness JLF (also known in the record as JLC).

4.      Prosecutor Misconduct, as seen in Issue #(4)- showing photographs of the victim tied to a 4x4.

5.      Ineffective Assistance of Counsel marked as Issue (1) ground (1) for failing to present a trial brief and motions in limine and failure object at trial to improper comments regarding Mr. Brundage's post-arrest silence

inferring his guilt, characterizations and opinions regarding his conduct
and veracity.

(ECF No. 8).

## EVIDENTIARY HEARING NOT REQUIRED

If a habeas applicant has failed to develop the factual basis for a claim in state court, an
evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim
relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by
the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that
could not have been previously discovered through the exercise of due diligence; and (B) the
facts underlying the claim would be sufficient to establish by clear and convincing evidence that
but for constitutional error, no reasonable fact finder would have found the applicant guilty of the
underlying offense.  28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims are based on legal arguments, not disputed facts.  Further, petitioner
has not set forth any factual basis for his claims that could not have been previously discovered
by due diligence.  Finally, the facts underlying petitioner's claims are insufficient to establish that
no rational fact finder would have found him guilty of the crime.  Therefore, this court concludes
that there is no reason to conduct an evidentiary hearing.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a
constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 explicitly states
that a federal court may entertain an application for writ of habeas corpus "only on the ground
that [the petitioner] is in custody in violation of the constitution or law or treaties of the United
States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal

1   habeas corpus relief does not lie for mere errors of state law.  Estelle v. McGuire, 502 U.S. 62

2   (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).

3          A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

4   merits in the state courts unless the adjudication either: (1) resulted in a decision that was

5   contrary to, or involved an unreasonable application of, clearly established federal law, as

6   determined by the Supreme Court; or (2) resulted in a decision that was based on an

7   unreasonable determination of the facts in light of the evidence presented to the state courts.  28

8   U.S.C. §2254(d).   Further, a determination of a factual issue by a state court shall be presumed

9   correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

10  convincing evidence.  28 U.S.C. §2254(e)(1).

## DISCUSSION

11         A.      *Exhaustion and procedural default.*

12         A state prisoner seeking habeas corpus relief in federal court must exhaust available state

13  relief prior to filing a petition in federal court. As a threshold issue the court must determine

14  whether or not petitioner has properly presented the federal habeas claims to the state courts. 28

15  U.S.C. § 2254(b)(1) states, in pertinent part:  (b)(1) An application for a writ of habeas corpus on

16  behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless

17  it appears that: (A) the applicant has exhausted the remedies available in the courts of the state;

18  or (B)(i) there is an absence of available state corrective process; or (ii) circumstances exist that

19  render such process ineffective to protect the rights of the applicant. If respondent intends to

20  waive the defense of failure to exhaust state remedies, respondent must do so explicitly.  28

21  U.S.C. § 2254 (b)(3).

To exhaust state remedies, petitioner's claims must have been fairly presented at every level of appeal in the state courts.  Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  Duncan, 513 U.S. at 365-66 (*citing* Picard, 404 U.S. at 275 *and* Anderson v. Harless, 459 U.S. 4 (1982)). The petitioner must present the claims to the state's highest court, even if such review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Larche v. Simons, 53 F.3d 1068, 1071 (9th Cir. 1995).  A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition.  Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir. 1982), cert denied 461 U.S. 916 (1983); Shiers v. California, 333 F.2d 173, 176 (9th Cir. 1964) (petitioner failed to exhaust the claim that the state trial court improperly admitted evidence because petitioner never presented such a claim to the state court). Specifically, a petitioner must apprise the state court that an alleged error is not only a violation of state law, but a violation of the Constitution.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

In the direct appeal, petitioner did not exhaust any claim that is part of his petition.  He raised one claim of ineffective assistance of counsel in his first personal restraint petition by arguing that his counsel should not have discounted petitioner's testimony. (ECF No. 20, Exhibit 14(issue 1B)).  He also raised this issue in his motion for discretionary review (ECF No. 20, Exhibit 20 (revised, issue 1A)).  This is the only ground for relief that has been exhausted.  The remaining claims are procedurally defaulted.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as

a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (*citing* Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples that may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a showing that the factual or legal basis for a claim was not reasonably available to counsel", or "ineffective assistance of counsel." McCleskey, 499 U.S. at 494 (*citing* Murray, 477 U.S. at 488). Petitioner cannot show cause for his not exhausting his grounds for relief. The court recommends all grounds for relief be denied for failure to exhaust other than the single claim that counsel was ineffective for discounting petitioner's testimony.

B.     *Ineffective Assistance of Counsel.*

In order to establish that petitioner was ineffectively assisted by counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the proceeding.  Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Id. at 689.  In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different.  Strickland, 466 U.S. at 694.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), it is not enough for a petitioner to convince this court that the state court applied Strickland incorrectly; rather,

REPORT AND
RECOMMENDATION - 10

1    petitioner must show that the state court applied <u>Strickland</u> in an objectively unreasonable

2    manner. <u>28 U.S.C.A. § 2254(d)(1)</u>; <u>see</u> <u>Harrington v.</u> Ritcher, _ U.S. _, 131 S. Ct. 770, (2011).

3

4          The Washington State Court of Appeals held that counsel performed reasonably and that

the decision to tell the jury to discount petitioner's testimony was strategic (ECF No. 20, Exhibit

5

6    17, page2).  The Washington State Supreme Court also considered this argument in petitioner's

7    motion for discretionary review and held:

8
> It is readily apparent counsel had sound tactical reasons for acknowledging Mr.
> Brundage's credibility issues and his violations of court orders.  Mr. Brundage
9 > gave conflicting stories, and he admitted contacting his spouse in clear violation
> of court orders.  Counsel was making the best of a bad situation, bolstering Mr.
10 > Brundage's remaining credibility by way of candor to the jury.  Moreover, in light
> of the evidence against Mr. Brundage, counsel had a tactical basis for
11 > emphasizing lesser included alternatives to the jury in order to defeat conviction
> of greater charges.  Counsel was somewhat successful in that regard because the
12 > jury convicted Mr. Brundage of the lesser charges of second degree rape and
> second degree kidnapping.
13

14    (ECF No. 20, Exhibit 22, page 2). Petitioner fails to show this holding is objectively

15    unreasonable.  This petition is without merit.  The court recommends dismissal of the petition.

16 <u>**CERTIFICATE OF APPEALABILITY**</u>

17

18          A petitioner seeking relief under 28 U.S.C. § 2254 may appeal a district court's dismissal

of his federal habeas petition only after obtaining a certificate of appealability (COA) from a

19

20    district or circuit judge.  A certificate of appealability may issue only where a petitioner has

21    made "a substantial showing of the denial of a constitutional right."  <u>See</u> 28 U.S.C. § 2253(c) (3).

22    A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with

23    the district court's resolution of his constitutional claims or that jurists could conclude the issues

24    presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537

25    U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a

26    certificate of appealability with respect to this petition.

REPORT AND
RECOMMENDATION - 11

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of de novo review by the District Court Judge. See, 28 U.S.C. 636 (b)(1)(C).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 17, 2011 as noted in the caption.

Dated this 25th day of May, 2011.


J. Richard Creatura
United States Magistrate Judge

REPORT AND
RECOMMENDATION - 12